**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYRONE J. THOMPSON, on Behalf of Himself and All Others Similarly Situated,<br><br>               Plaintiff<br><br>   v.<br><br>ANADARKO E&P ONSHORE, LLC; ANADARKO PETROLEUM CORPORATION; ANADARKO E&P COMPANY, LP; MITSUI E&P USA, LLC; and STATOIL USA ONSHORE PROPERTIES, INC.<br><br>              Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT AND JURY DEMAND |

## CLASS ACTION COMPLAINT

Comes now the Plaintiff, on behalf of himself and all others similarly situated, and by and through his undersigned counsel, files this Complaint against the named Defendants, and in support thereof states as follows:

## I.    INTRODUCTION

1.    This is a class action to obtain monetary damages and declaratory and injunctive relief based on the underpayment of royalties and/or the materially confusing and inaccurate reporting of royalty payments by Defendants on natural

gas produced under common oil and gas leases entered by Plaintiff and similarly situated Class members in the Commonwealth of Pennsylvania.

## II. PARTIES

### A. Plaintiff

2.  Plaintiff Tyrone J. Thompson is a citizen of the Commonwealth of Pennsylvania. He resides at 254 Abbey Lane, Leesport, Pennsylvania 19539.

3.  Plaintiff is the owner of property, including gas interests, in Bradford County, Pennsylvania. Plaintiff is a party to an oil and gas lease under which Plaintiff, as lessor, leased certain of his gas interests in Bradford County to Chesapeake Appalachia, LLC ("Chesapeake"), as lessee. A true and correct copy of Plaintiff's lease is attached hereto as Exhibit "A." Each of the Defendants has acquired from Chesapeake and currently owns an undivided interest in the lease as a lessee/working interest owner.

### B. Defendants

4.  Defendant Anadarko E&P Onshore, LLC, is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Texas. For the purposes of this action, it is a citizen of Delaware and of Texas pursuant to 28 U.S.C. §1332(d)(10).

5.  Anadarko Petroleum Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of

business located in the State of Texas. For the purposes of this action, it is a citizen of Delaware and of Texas pursuant to 28 U.S.C. §1332(c)(1).

6. Anadarko E&P Company, LP, is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Texas. For the purposes of this action, it is a citizen of Delaware and of Texas pursuant to 28 U.S.C. §1332(d)(10).

7. Anadarko E&P Onshore, LLC, Anadarko Petroleum Corporation and Anadarko E&P Company, LP, are affiliated entities. Each of them has held working interests in the leases at issue or calculated and remitted royalty payments to Plaintiff and the class members. They will be referred to herein collectively as "Anadarko."

8. Defendant Mitsui E&P USA, LLC ("Mitsui") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Texas. For the purposes of this action, it is a citizen of Delaware and of Texas pursuant to 28 U.S.C. §1332(d)(10).

9. Defendant Statoil USA Onshore Properties, Inc. ("Statoil") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Texas. For the purposes of this action, it is a citizen of Delaware and of Texas pursuant to 28 U.S.C. §1332(c)(1).

## III.   JURISDICTION

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 (diversity jurisdiction) and the Class Action Fairness Act ("CAFA"), in that (i) there is diversity (Plaintiff is a citizen of Pennsylvania and Defendants are citizens of states other than Pennsylvania, and a member of the class is a citizen of a state different from any of the defendants), (ii) the aggregate amount in controversy exceeds five million dollars ($5,000,000) exclusive of interest and costs, and (iii) there are more than 100 members of each of the proposed classes.

11.     Each Defendant conducts substantial business in the Commonwealth of Pennsylvania, including, *inter alia*, producing gas and entering into agreements for the sale of property and property rights, and has sufficient contacts with Pennsylvania or otherwise intentionally avails itself of the laws of Pennsylvania, so as to sustain this Court's jurisdiction over the Defendant.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 (a)(2) because a substantial part of the acts and transactions giving rise to the claims occurred in the Commonwealth of Pennsylvania and in this District, and pursuant to 28 U.S.C. § 1391(a)(3) because Defendant is subject to personal jurisdiction at the time this action is commenced.

## IV. DEFINITIONS

13.     The following definitions apply to this Complaint:

a.     "Gas" means natural gas, including associated liquid hydrocarbons, that is not Processed Gas or Treated Gas.

b.     "Processed Gas" means natural gas that is processed for the recovery of natural gas liquids therefrom in a gas processing, absorption, stripping or similar plant with resulting natural gas liquids that are separately marketed and sold.  Natural gas is not Processed Gas solely because it is passed through a mechanical separator for the removal of liquid hydrocarbons at or near a well.

c.     "Treated Gas" means natural gas that is treated in a plant or facility designed for the removal of hydrogen sulfide, carbon dioxide, or other contaminants.  Natural gas is not Treated Gas solely because it is passed through a mechanical separator for the removal of liquid hydrocarbons, water, or contaminants at or near a well.

d.     "Market Enhancement Clause" means Royalty payment clauses or provisions in an oil and gas lease that preclude the lessee from deducting costs incurred to transform leasehold gas into marketable form or make such gas ready for sale or use but permit the lessee to deduct a pro rata share of costs incurred after the gas is marketable or ready for sale or use.  Such clauses are often entitled

or referred to as "Market Enhancement Clauses," "MECs" or "Ready for Sale or Use Clauses."

e.     "Pennsylvania Leases" means each and every oil and gas lease that (a) covers a leasehold located in Pennsylvania, and (b) is or has been owned, in whole or in part, by one or more of the Defendants, according to the business records maintained by the Defendants, or any of them.

f.     "Pennsylvania MEC Leases" means each and every oil and gas lease that (a) covers a leasehold located in Pennsylvania, (b) contains a Market Enhancement Clause, and (c) is or has been owned, in whole or in part, by Anadarko as a lessee, according to the business records maintained by Anadarko.

g.     "Royalty" means lessor royalty interests, and does not include overriding royalty interests.

## V.     COMMON FACTUAL BACKGROUND FOR MEC CLASS (ANADARKO ONLY)

14.     Plaintiff and the MEC Class Members described below have received and/or are entitled to receive Royalties from Anadarko under one or more Pennsylvania MEC Leases on Gas produced by Anadarko (or by a third party for Anadarko).  Anadarko is responsible for the proper determination, calculation, distribution, and payment of Royalties due and owing to Plaintiff and the MEC Class Members on Gas produced by Anadarko (or by a third party for Anadarko).

15.     Through the uniform practices, acts and omissions described herein, Anadarko has failed to pay the true Royalties owed to Plaintiff and the MEC Class Members, and Plaintiff and the MEC Class Members have been and/or will be damaged in an amount to be proven at trial.

16.     Under the express terms of the Pennsylvania MEC Leases, Anadarko is not permitted to deduct from Royalty payments to Plaintiff and the MEC Class Members the costs Anadarko incurs to transform Plaintiff's and the MEC Class Members' Gas into marketable form.

17.     Anadarko's Gas production is moved from the producing well through a series of gathering lines, dehydrators, and compressor stations, and eventually delivered to interstate pipelines, including to the Tennessee Gas pipeline and the Transco pipeline, for sale and delivery to various end-use customers. Substantial volumes of water are entrained in the raw gas stream, and the Gas must be dehydrated in order for the Gas to meet the quality specifications of the interstate pipeline systems. Dehydration takes place at various points upstream of the interstate pipeline inlet, i.e., prior to the Gas entering the interstate pipeline.

18.     When calculating its Royalty payments to Plaintiff and the Class Members, Anadarko deducts costs for various "post-wellhead" activities, including costs for gathering, dehydration, compression, and otherwise placing the Gas onto the interstate pipeline system.

19. Plaintiff contends that Anadarko's Gas is not in marketable form until it meets the quality and pressure specifications of the interstate pipeline into which it is delivered. Plaintiff contends, therefore, that the raw Gas produced by Anadarko is not marketable at the well and that Anadarko's deductions for gathering, dehydration and compression are improper and in breach of the Pennsylvania MEC Leases, i.e., the deductions are for activities that are necessary to transform the Gas into marketable form.

20. Anadarko has deducted and will, upon information and belief, continue to deduct costs for gathering, dehydration and compression. Anadarko should be enjoined and restrained from taking such deductions under the Pennsylvania MEC Leases in the future.

## VI.   COMMON FACTUAL BACKGROUND FOR ROYALTY REPORTING CLASS (ALL DEFENDANTS)

21. After entering the oil and gas lease with Plaintiff referenced in paragraph 3, above, Chesapeake assigned an undivided interest in the lease to Statoil and assigned an undivided interest in the lease to Anadarko. Anadarko thereafter assigned an undivided portion of its interest in the lease to Mitsui. As a result of these various assignments, Plaintiff's lease is held by Chesapeake (37.5%), Anadarko (37.5%), Statoil (16.25%), and Mitsui (16.25%).

22. Plaintiff's lease is currently included in three different producing gas units located in Bradford County, Pennsylvania, including the Schoonover 2H, the

Allen 5H, and the Stevens North 2H units. Defendants are working interest owners in each of these units. Defendants also own working interests in a number of other producing gas units in Pennsylvania.

23. Each Defendant, as a working interest owner in a gas unit that includes one or more Pennsylvania Leases, is entitled to take "in kind" an amount of gas production from the unit that is proportionate to its gross working interest ownership in the unit. Each Defendant, therefore, takes gas "in kind" from the unit in which it owns a working interest; markets and sells the volume of gas it has taken; and, on a monthly basis, calculates and makes royalty payments to those persons and entities, such as Plaintiff and the Royalty Reporting Class Members, whose leases are included within the unit.

24. When it makes royalty payments, each Defendant sends to its royalty payees, including Plaintiff and the Royalty Reporting Class Members, a remittance statement (or "check stub") containing information pertinent to the Defendant's royalty payment calculation. Each Defendant uses a check stub format that is different from the check stub format used by each of the other Defendants. Defendants' use of differing check stub formats creates substantial confusion for royalty payees such as Plaintiff and the Royalty Reporting Class Members, who are entitled to receive an accurate and comprehensible accounting of the royalty calculation the check stubs purport to reflect.

25.     Regardless of the format used, the check stubs for each Defendant fail to disclose, specify, or explain whether the royalties being paid by that Defendant are being paid on a gas volume that is measured at the wellhead or on a gas volume that is measured at a downstream sales point.  The check stubs further fail to disclose, specify, or explain whether the gas volume shown on the check stub (a) is the volume of gas which the Defendant was entitled to take from the unit/well, or (b) is the volume of gas which the Defendant actually took from the unit/well, regardless of its entitlement, or (c) is the volume of gas attributable to all working interests in the well (i.e., full well stream volume).

26.     When Defendants own working interests in the same unit and are separately paying royalties to the same royalty payees in the unit, Defendants are obligated to and should coordinate their royalty payment and royalty reporting practices to ensure that each royalty payee (a) receives accurate royalty payments based on the total gas volume produced from the unit and based on the entirety of their net revenue interest in the unit, and (b) is not confused by differences in Defendants' royalty calculation methodologies and/or check stubs.  Defendants have failed to do this, however.  For example, in the Schoonover 2H unit in which Plaintiff's lease is included, Anadarko reports on its monthly stubs a volume of gas that is, upon information and belief, the volume of gas that Anadarko actually took "in kind" from the unit during the subject production month; and Anadarko applies

Plaintiff's full net revenue decimal interest in the unit to calculate its royalty payment to Plaintiff. In contrast, Mitsui reports on its monthly check stubs a volume of gas that is, upon information and belief, the total volume of gas produced from the unit during the subject production month; and Mitsui then applies a net revenue decimal interest for Plaintiff that is only 16.25% of Plaintiff's net revenue decimal interest in the unit, and thereby pays royalties on an "entitlements" basis, without regard to how much gas Mitsui actually took "in kind" from the unit. Such inconsistent royalty calculation and reporting practices create undue confusion for royalty owners and, more importantly, cause royalty payees such as Plaintiff and the Royalty Reporting Class Members to be paid incorrectly.

27.     In addition, Defendants' check stubs overstate (misrepresent) the unit prices they have received for their gas sales.

28.     Gas volume is measured and expressed in "Mcf" (1,000 cubic feet). However, gas is marketed, valued and sold on an "MMBtu" basis. (The term "MMBtu" equals one million British thermal units (BTU); and one BTU is the heat required to raise the temperature of one pound of water by one degree Fahrenheit.) In other words, hydrocarbon gas is valued and priced/sold based on its heating content, which is expressed in MMBtu's. (Because of this, 100 Mcf of gas with a Btu content of 1.05 is more valuable than 100 Mcf of gas with a Btu content of

0.95.)

29.     Because gas is marketed, valued, and sold on an MMBtu basis, publicly available gas price information and indices (e.g., NYMEX, OPIS, Platt's, etc.) report industry gas sales prices on an MMBtu basis, not on an Mcf basis. Such published gas prices, among other things, enable royalty payees (if they have the right information) to compare their lessee's MMBtu gas prices with industry-reported MMBtu prices, and thus help them determine if their lessee is paying royalties on the highest prices obtainable.

30.     Defendants' check stubs contain specific unit prices, but those unit prices are Mcf prices, not MMBtu prices. The Mcf prices shown by Defendants are false and misleading; Defendants do not sell their gas on an Mcf basis.  In addition, the gas produced in Pennsylvania and sold by Defendants has a Btu content in excess of 1.0.  Therefore, the unit prices (Mcf) shown by Defendants on their check stubs are higher than the unit prices (MMBtu) Defendants actually received. Such overstated unit prices are intended to mislead Plaintiff and the Royalty Reporting Class Members, because the Defendants' reported unit prices (apples) compare more favorably to published industry prices (oranges) than do Defendants' actual MMBtu sales prices (oranges).  Defendants' use of Mcf unit prices on their check stubs is intentionally misleading and improper.

31.     The information that Defendants do include on their check stubs is not

sufficient to allow Plaintiff and the Royalty Reporting Class Members to compare Defendants' MMBtu sales prices with published MMBtu sales prices.

32.     Defendants owe duties under the Pennsylvania Leases to Plaintiff and the Royalty Reporting Class Members that are implied by law, including the duty of good faith and fair dealing and the duty to act as a reasonably prudent operator. In addition, the law imposes on Defendants the duty to not make representations to Plaintiff and the Royalty Reporting Class Members that are materially false and misleading. The acts and omissions of Defendants described herein violate all of those legal duties.

33.     Defendants' relationship with Plaintiff and the Royalty Reporting Class Members is such that Plaintiff and the Royalty Reporting Class Members have reasonably placed trust and confidence in Defendants to act in good faith with respect to their obligations to Plaintiff and the Royalty Reporting Class Members. Defendants, however, have deprived Plaintiff and the Royalty Reporting Class Members of information that is material to their royalty calculation and they are entitled to receive.

34.     Defendants are in exclusive possession, custody and control of all information concerning their respective royalty calculations and payments. Plaintiff and the Royalty Reporting Class Members do not have access to this information and are compelled to rely on Defendants to accurately, fairly, and

honestly pay and report royalties to Plaintiff and the Class Members.

35. Defendants have implemented policies and procedures which have caused incomplete, confusing, and materially misleading royalty payment statements to be sent to Plaintiff and the Royalty Reporting Class Members. Plaintiff and the members of the Royalty Reporting Class are entitled to receive an accounting from Defendants, including the disclosure of material information relating to Defendants' production volumes, sales volumes, and sales prices. In addition, or alternatively, through the issuance of declaratory and/or injunctive relief, Defendants should be required to remedy their past inaccurate reportings by sending supplemental and corrected royalty payment statements to Plaintiff and the Royalty Reporting Class Members.

36. Defendants should also be required, through the issuance of declaratory and/or injunctive relief, to revise their royalty calculation and royalty reporting practices, adopt and utilize a uniform check stub format that is common to all Defendants, and otherwise provide full, accurate, and transparent royalty calculation and payment information to Plaintiff and the Royalty Reporting Class Members.

## VII. <u>CLASS ACTION ALLEGATIONS</u>

37. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the MEC Class, defined as follows:

All individuals and entities, including their predecessors and successors-in-interest, who are lessor parties to an oil and gas lease that (a) covers a leasehold located in Pennsylvania, (b) contains a Market Enhancement Clause, and (c) is or has been owned, in whole or in part, by Anadarko as a lessee, according to the business records maintained by Anadarko.

38.     Excluded from the MEC Class are: (a) Anadarko, Anadarko's affiliates, and their respective predecessors and successors; (b) any person or entity who owns a working interest in or operates a gas well in Pennsylvania; (c) any person or entity who receives royalty in kind pursuant to a Pennsylvania MEC Lease; (d) any person (i) whose lease contains a Market Enhancement Clause, (ii) to whom Anadarko has made no Royalty payments as of the date of this Complaint, and (iii) whose lease has been sold, transferred, and/or assigned by Anadarko in its entirety as of the date of this Complaint; (e) any person or entity who has previously released Anadarko from liability for the claims asserted herein; (f) the federal government; (g) the Commonwealth of Pennsylvania; (h) legally-recognized Indian Tribes; and (i) any Judge or Magistrate Judge presiding over this action and members of their respective families.

39.     Plaintiff also, pursuant to Rule 23 of the Federal Rules of Civil Procedure, brings this action on behalf of himself and the Royalty Reporting Class, defined as follows:

All persons and entities who have, since March 1, 2012, received royalties and royalty remittance statements (check stubs) from

Anadarko, Statoil, and/or Mitsui on gas produced under a Pennsylvania Lease, according to the business records maintained by Defendants, or any of them.

40.     Excluded from the Royalty Reporting Class are: (a) Defendants and their respective affiliates, predecessors and successors; (b) any person or entity who owns a working interest in or operates a gas well in Pennsylvania; (c) any person or entity who receives royalty in kind pursuant to a Pennsylvania Lease; (d) the federal government; (e) the Commonwealth of Pennsylvania; (f) legally-recognized Indian Tribes; and (g) any Judge or Magistrate Judge presiding over this action and members of their respective families.

41.     *Numerosity:*  As to each Class, the members ("Class Members") are so numerous that joinder of all members is impractical.  The precise number and identity of the members of the MEC Class and of the Royalty Reporting Class are unknown to Plaintiff.  However, upon information and belief, Plaintiff believes it is in excess of 1,000 for each class.  Moreover, upon information and belief, the number and identity of the Class Members is ascertainable from Defendants' records and the Class Members may thus be notified of the pendency of this action by first class mail.

42.     *Commonality:* As to each Class, there are questions of law and/or fact common to the Class that predominate over any questions affecting individual

Class Members. These questions are capable of classwide resolution, and answering them will resolve issues central to the validity of Plaintiff's claims.

43. As to the MEC Class, common questions include, but are not limited to, the following:

a. The methodology and underlying records used by Anadarko to calculate Royalties due to Plaintiff and the MEC Class Members;

b. The types of post-wellhead costs and other fees, costs, and expenses that were charged, directly or indirectly, by Anadarko to Plaintiff and the MEC Class Members;

c. Whether Anadarko has failed to pay royalties to Plaintiff and the MEC Class Members on gas that was produced but used as fuel or was lost or otherwise unaccounted for during gathering, compression, or dehydration operations;

d. Whether the post-wellhead costs (monetary or volumetric) charged by Anadarko to Plaintiff and the MEC Class Members are improper as a matter of law and/or fact;

e. Whether Anadarko has violated its duty to properly account and pay Royalties to Plaintiff and the Class Members on Gas produced in Pennsylvania as a result of the acts and omissions described herein; and

f. Whether the Gas is marketable at the well.

44. As to the Royalty Reporting Class, common questions include, but are not limited to, the following:

a. The methodology and underlying records used by Defendants to calculate and report gas royalties due to Plaintiff and the Royalty Reporting Class Members under the Pennsylvania Leases;

b. The check stub formats that have been used by Defendants;

c. The check stub format that should be used by Defendants;

d. The type of information that has been included on Defendants' check stubs;

e. The type of information that should be included on Defendants' check stubs; and

f. Whether Defendants have violated their duty to provide accurate and comprehensible royalty payment information to Plaintiff and the Royalty Reporting Class Members as a result of the acts and omissions described herein.

45. The common pattern of conduct by Defendants (along with the common theories for redressing the misconduct) support the maintenance of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

46. *Typicality:* Plaintiff's claims are typical of the claims of the MEC Class, as all such claims arise out of Anadarko's uniform practice of making deductions (monetary and/or volumetric) for gathering, dehydration and compression of the Gas (breach of leases), including improperly imposing on Plaintiff and the MEC Class Members the costs of placing the Gas produced by Anadarko in a marketable condition. Plaintiff's claims also are typical of the claims of the Royalty Reporting Class, as all such claims arise out of Defendants' royalty reporting practices and the common legal duties owed by Defendants to Plaintiff and the Royalty Reporting Class.

47. *Adequate Representation:* Plaintiff will fairly and adequately protect the interests of each Class. Plaintiff has retained counsel with experience in complex class action litigations, including actions involving breaches of oil and gas leases and underpayment of royalties. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes they seek to represent, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the Classes.

48. *Predominance and Superiority:* As to the MEC Class, this class action is appropriate for certification because questions of law and fact common to the members of the MEC Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and

efficient adjudication of this controversy, since individual joinder of all members of the MEC Class is impracticable. Absent a class action, many members of the MEC Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law. Because of the size of the individual MEC Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein. A class action is the only realistic method available for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation makes it impracticable for members of the MEC Class to seek redress individually for the wrongful conduct alleged herein. Were each individual MEC Class Member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings that would be contrary to the interest of justice and equity. Absent a class action, Anadarko will probably continue the improper and wrongful conduct herein described, the MEC Class Members will continue to be damaged by Anadarko's wrongful conduct, and Anadarko's violations of the law will continue without remedy.

49.     As to the Royalty Reporting Class, this class action is appropriate for certification because Defendants have acted or refused to act on grounds that apply generally to the class – namely, through the provision of inaccurate,

incomprehensible, and/or confusing check stubs and royalty statements – so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VIII.  CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

50.     Plaintiff and the MEC Class Members entered into the Pennsylvania MEC Leases, which are contracts pursuant to which Anadarko owed and owes Royalties for the production and sale of Gas.

51.     The conduct described under Section V, above, constitutes violations and breaches of the express obligations which Anadarko owes to Plaintiff and the MEC Class Members under their Pennsylvania MEC Leases.

52.     Plaintiff and the Royalty Reporting Class Members entered into the Pennsylvania Leases, which are contracts pursuant to which Defendants owed and owe Royalties for the production and sale of Gas.

53.     The conduct described under Section VI, above, constitutes violations and breaches of implied obligations, including the duty of good faith and fair dealing and the duty to act as a reasonably prudent operator, which Defendants owe to Plaintiff and the Royalty Reporting Class Members under their Pennsylvania Leases.

54.     Plaintiff and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from Defendants, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

**COUNT II**
**REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**

55.     Actual controversies between the parties exist.  Plaintiff claims that Anadarko improperly deducts certain expenses in violation of the Pennsylvania MEC Leases, and Anadarko denies the same.  Plaintiff also claims that Defendants calculate and report their royalties improperly, and Defendants deny the same. Such controversies should be resolved, and the rights and obligations of the parties should be declared through declaratory judgments issued pursuant to, *inter alia*, 28 U.S.C. §2201(a).

56.     Plaintiff and the Class Members have been damaged and are threatened with future damages by Defendants' policies and practices, and each Defendant has acted, and threatened to act, on grounds generally applicable to the individual Class Members, thereby making appropriate permanent injunctive relief enjoining Defendants from further engaging in the improper and wrongful conduct heretofore alleged.

57.     The balance of equities is in favor of granting the injunctive relief, as Plaintiff and the Class Members have been injured by Defendants' actions, will

continue to be injured, and will suffer irreparable harm absent the requested injunctive relief.

## IX.    **PRAYER FOR RELIEF**

58. Plaintiff respectfully requests, on behalf of himself and the Classes, that this Court:

a. Enter an order, pursuant to Rule 23, certifying each Class, appointing Plaintiff as Class Representative for each Class, and appointing the undersigned counsel of record as Class Counsel for each Class;

b. Enter judgment in favor of Plaintiff and the Class Members for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

c. Award reasonable attorney fees and costs to Plaintiff and to Class Counsel;

d. Enter an order(s) for declaratory relief and for injunctive relief enjoining Defendants from pursuing the policies, acts and practices described in this Complaint; and

e. Grant such other and further legal and equitable relief as this Court deems just and necessary.

Dated:  March 30, 2017

TYRONE J. THOMPSON, on Behalf of Himself and All Others Similarly Situated, PLAINTIFF

By:    *s/Charles E. Schaffer*
Charles E. Schaffer (PA Bar No. 76259)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (215) 592-1500
Facsimile:   (215) 592-4663
CSchaffer@lfsblaw.com

Michelle R. O'Brien (PA Bar No. 90470)
THE O'BRIEN LAW GROUP LLC
4099 Birney Avenue
Moosic, PA 18507
Telephone: (570) 209-7901
Facsimile:  (570) 309-0147
mobrien@theobrienlawgroup.com

Larry D. Moffett (*Pro Hac Vice* to Be Submitted)
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Boulevard, Suite R
P.O. Box 1396
Oxford, MS  38655
Telephone:  (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

John W. ("Don") Barrett (*Pro Hac Vice* to Be Submitted)
BARRETT LAW GROUP
Post Office Drawer 927
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

Charles J. LaDuca (*Pro Hac Vice* to Be Submitted)
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW
Suite 200
Washington, D.C.  20016
Telephone: (202) 789-3960
Facsimile:  (202) 789-1813
charles@cuneolaw.com

David S. Stellings (*Pro Hac Vice* to Be Submitted)
Daniel Seltz (*Pro Hac Vice* to Be Submitted)

Alexandra C. Warren (PA Bar No. 93651)
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002

LIEFF, CABRASER, HEIMANN &     Tel:  (202) 789-3960
BERNSTEIN, LLP                 Fax: (202) 789-1813
250 Hudson Street, 8th Floor   awarren@cuneolaw.com
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
dstellings@lchb.com
dseltz@lchb.com

Attorneys for Plaintiff and All Others Similarly Situated